Dunkelberg Farms, Inc., an Indiana corporation having its domicile in Fort Wayne and which is plaintiff herein, avers its ownership of two diamond ear screws now possessed by defendant, Continental-American Bank Trust Company of Shreveport, Louisiana, and prays that possession thereof be restored to it. T.E. Madding, also cited as a defendant, asserts an interest in the property.
Plaintiff is appealing from a judgment that rejected its demands with costs.
The case of Dunkelberg Farms, Inc., v. Mays et al., decided by this court in 1931, involved the identical demands. It was dismissed as of nonsuit. 19 La.App. 106, 138 So. 224, 225.
Charles A. Dunkelberg died in the year 1918, possessed of property located in Indiana and Texas. Surviving him were his widow, Mrs. Anna C. Dunkelberg, and their two sons, Charles and Ralph.
With funds received from the estate of her deceased husband, the widow in 1919 purchased the aforementioned diamond ear screws. She paid in cash therefor the sum of $1,336.
In the fall of 1928, while domiciled in Houston, Texas, and living with her second husband, F.A. Bell, she visited for a few days in the City of Shreveport, the Louisiana State Fair being then in progress. With her was the husband Bell, who then *Page 802 
had in his possession, with the permission of Mrs. Bell, the jewelry in question.
During the visit, Bell became indebted to one Cal Cross in the amount of $400, and to secure payment of the debt he pledged to Cross the ear screws. Later, through the intervention of a friend, he solicited T.E. Madding, a defendant herein, to advance funds sufficient to pay off Cross and to provide him, Bell, an additional $400. To this Madding agreed, advancing to Bell the total sum of $800 and receiving in pledge the jewelry.
Thereafter, it was delivered to the American National Bank of Shreveport, now the Continental-American Bank Trust Company, to secure payment of a loan of $800 which Madding negotiated with that establishment. Subsequently this loan was paid by Madding, but the ear screws were left in the bank's possession.
The plaintiff corporation was organized in 1923 by the said Mrs. Anna C. Dunkelberg, later Mrs. Bell, along with her two sons, Charles and Ralph Dunkelberg; and all of its stock, being 1000 shares, was subscribed by them. Its position in this action is that in 1925 it acquired the ear screws from Mrs. Bell, the consideration for the acquisition being the issuance to her of shares of its capital stock and an annual income of $3,000 from the earnings of said corporation; and they were owned by it when pledged by Bell in 1928. This asserted good faith transfer is disputed by defendants.
The primary issue in this litigation, as stated in our opinion of the former case, concerns "the ownership of the diamond ear screws in controversy. If the plaintiff is the owner, then none of the attempted acts of pledge can prevail against it to deprive it of its property." And, as we then said, the burden of proving its ownership is with the plaintiff.
The trial judge resolved the posed factual question in favor of defendants, holding "that the evidence adduced herein falls far short of sustaining the burden of proof imposed upon plaintiff." We are convinced, after carefully studying the record, that his conclusion is well founded.
As stated in its charter, the object or purpose of the plaintiff corporation when organized in 1923 was to deal in real estate. Its only asset then was a 390 acre farm in Allen County, Indiana, the estimated value of the equity of which was $10,000. It was not authorized "to acquire, hold and sell as investments or otherwise any and all kinds of personal property" until 1929, in which year its Articles of Incorporation were so amended.
Furthermore, there is no document in the record dated in 1925, the year when the acquisition allegedly occurred, reciting the transfer of the jewelry by Mrs. Bell to plaintiff. The only writing introduced and filed that might evidence such a conveyance of jewelry is a bill of sale dated June 16, 1930. It purports to ratify previously made transfers of personal property; but it is of little probative value in view of its execution occurring subsequent to the commencement of this litigation.
It was testified by Mrs. Bell that she made a manual delivery of the ear screws to plaintiff corporation in 1925 by handing them to its president, Ralph Dunkelberg; and that a trust agreement entered into in 1927 by and between her and her two sons, the three being all of the stockholders, recited the consideration or compensation she would receive for the transfer of that and other property.
Mrs. Bell, prior to the date of the trust agreement, owned 334 shares of the corporation's stock, while the sons owned 333 shares each. Under the terms of that instrument 997 shares of the total 1000 shares of stock were transferred by those individuals to Mrs. Anna C. Dunkelberg (Bell), trustee; and it was stipulated that "in consideration of services rendered and to be rendered by the trustee that said trustee shall retain as full compensation one-half of the net proceeds from said stock." But the trust agreement makes no mention of the corporation's acquiring of any property from Mrs. Bell; hence it in no manner corroborates her testimony.
Quite injurious to plaintiff's position is a letter addressed by Mrs. Anna C. Bell under date of July 6, 1929, to one Ralph Mays, the friend of Bell who arranged the loan with Madding, reading in part: "Mr. Bell received your letter saying that you had arranged to carry the loan on the diamond ear screws until August First. * * * I am writing to say that we may not be able to meet the entire amount at that date, however, if you will tell us just how you are handling this we will give you something definite that you can depend on."
The trial judge's comment about this communication, with which we agree, is that it amounts to the writer's ratification of Bell's *Page 803 
pledge. Further, he appropriately observed: "If the property belonged to the corporation it is inconceivable that she would not have so stated in the letter. Actions at a time unsuspicious make strong proof."
The judgment is affirmed.